## Case No. 5,005.
### FOWLKES v. FOWLKES.
[21 Int. Rev. Rec. 358; 8 Chi. Leg. News, 41.]

Circuit Court, W. D. Virginia. 1875.

Thomas S. Flournoy and Charles E. Dabney, for the removal.

James M. Whittle and E. E. Bouldin, contra.

RIVES, District Judge. Ex parte Peter Fowlkes and others, on a motion to remove from the circuit court of Pittsylvania, and docket in this court for trial, a cause pending in the former against the petitioners at the suit of the heirs of George Fowlkes, deceased. On the first day of this term the petitioners filed their application for removal, accompanied by a full copy of the record. It is admitted that their petition was was also duly filed in the state court. The motion now made to docket this cause brings before the court the question whether this removal is warranted by the act of congress, and whether this court can entertain jurisdiction in the cause. The petitioners allege that they are colored citizens of the United States, and of this state, to whom a certain George Fowlkes, deceased, late of Pittsylvania county, devised valuable lands and other property, by will duly recorded in the county court of Pittsylvania, at its December term, 1873; that afterwards the heirs at law of said George Fowlkes brought their bill in chancery against those petitioners and others to impeach the validity of said will in the circuit court of Pittsylvania; that an issue of devisavit vel non was directed and tried in said cause; a verdict found against the will; that verdict was set aside by the judges; a new trial awarded, and upon the trial the jury were hung and discharged from rendering a verdict; upon these facts the petitioners predicate their averment that "they are unable to enforce their rights in the judicial tribunals of the state on account of the prejudice that exists against them in the minds of the white population on account of their color, race and previous condition of sevitude." They further declare "their belief that if no difference existed between them and those claiming to be the heirs at law of the said Fowlkes, as to race, color and previous condition, that the juries in the state courts would have no difficulty in finding, under the facts and circumstances of the case, that the said paper writing was the true last will and testament' of the late George Fowlkes." Is this application, then, in conformity with the 641st section of the Revised Statutes?

It is observable that the late comprehensive act for the removal of causes from the state courts, approved March 3, 1875 [18 Stat. 470], embraces cases only originally cognizable by the federal courts. The same is the case of removal on the ground of "prejudice and local influence." The exception to this applies to cases of public officers, civil and military, sued on account of acts in the discharge of their official duties; and to persons denied or prevented from enforcing in the courts of the state their equal civil rights of citizens of the United States, and to officers, civil and military, or other persons for their acts or refusals under authority of the civil rights act. This departure from the fundamental principle of limiting removals to cases cognizable in the federal courts, results from the duty of the government to its officers; and the obligation of congress to enforce by appropriate legislation the provi-

sious of the fourteenth amendment to the constitution. These exceptional statutes, therefore, are to be strictly construed, interpreted if practicable, in subordination to and conformity with the theory of our judicial systems, state and federal, and the provisions of the constitution.

There is no law enabling a colored citizen, when impeached by another citizen of the same state, to remove his cause because of prejudice or local influence. This right is only given him when sued by a citizen of another state. And then the affidavit is prescribed to him, namely: "That he has reason to believe, and does believe, that from prejudice or local influence he will not be able to obtain justice in such state court." The interposition of the federal judiciary is wholly based upon this belief or apprehension; and why? Because the cause was originally cognizable in that judiciary, and its removal thereto would involve an enlargement of the jurisdiction. Had congress supposed that it had the power under the fourteenth amendment in a case between residents of the same state to give the colored citizen a right to remove his case on the ground of his belief that he could not obtain justice in the state court, why did it not use the language of the 639th section? Doubtless, the omission to use this language is due to the restricted and well guarded inhibitions of the fourteenth amendment: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Now, when section 641 speaks of "the denial of or inability to enforce in the judicial tribunals of the state, or in the part of the state, etc., equal civil rights of citizenship, is such language to be satisfied by the declaration of a belief or apprehension that such may be the result of the prejudice of race? The latter is a state of the mind; matter of conjecture and not traversable; it may be mere suspicion. At any rate, it is vague, uncertain, and can produce no practical issue. Not so with the former: there it appears as a fact, certain and absolute and, if need be, issuable and capable of contradiction. The petition must state "the facts; of what?" manifestly of "the denial or inability to enforce;" not merely of a belief or suspicion of these facts. When we construe this language in subordination to the constitutional amendment, it seems to me it clearly points to the action of the state in one of its three capacities—legislative, executive or judicial. Ought not the petitioner in such case to designate some law, some judicial ruling, some executive act, as the denial of his equal and civil rights, or as constituting the obstacle to his obtaining them? Surely it would be a mockery to assume his "suspicions" or "belief" in place of "the facts" for which this enactment calls. So far as the record of this case shows, the petitioners are enjoying their rights under the will of George Fowlkes; it is true, they are sued in respect to them; and when they were about to lose them by the verdict of a jury, the judge interposed to shield them from the effects of prejudice, they deprecate, and now their complaint is that on a second trial the jury were hung, and the plaintiffs could not obtain the verdict they wished. They are still secure in their rights, but apprehend they may not remain so.

This enactment of congress was never designed to appease the fears or lull the suspicions of a suitor in a case wholly cognizable in the state courts; it is designed to secure him the equal protection of the laws, and his equal civil rights, when invaded by the state in any part of its administration—legislative, executive or judicial. Nevertheless, the petition does not disclose any such case; it complains of no law of the state, general or local; no judicial ruling; no executive interference; it was a fear and belief of the existence of a prejudice of race, that is obstructing or delaying a decision in favor of the petitioners. They do not allege the absence of a law for change of venue in such case. They do not complain that juries are selected contrary to the state law, to which this court is required to conform as far as practicable. The fact is, my rule is based on the state law; it uses its phraseology as to qualification, and ordains a selection by lot as nearly conformable as practicable to the state practice; the only difference is that I require a representation of the colored race in the jury box, while the state merely allows their eligibility. I can scarcely doubt that in a case like this where there is a fear of race prejudice, the state court would guard against it by an impartial composition of the jury, as is often practiced; and may, it seems to me, be rightfully demanded in this cause. If this court were to try this case they would have to do so under the laws and judicial decisions of the state, when not in conflict with the laws of the United States and judicial decisions of its courts; hence there is eminent propriety in limiting removals to cases of such conflicts pertaining to the guaranteed, equal rights of citizens.

For these reasons, I conclude that the case of the petitioners is not embraced by the terms nor the proper construction of the section of the law, under which they prefer their application; that they allege "no denial of their civil rights nor inability to enforce them in the state court" arising from any act of the state government, either legislative, executive or judicial; and hence that this court cannot assume jurisdiction of their case by removing and entertaining it here.

THE COURT, therefore, refuses to docket the case, and directs it to be remitted to the circuit court of Pittsylvania.